Our next case for argument today is Dai v. Garland, Appeal No. 21-1315. I believe both counsel are appearing remotely for this. Do we have Ms. Li? Yes, yes. Hi. And Ms. Perry? Yes, I'm here. All right. Go ahead, Ms. Li. Thank you. Good morning, Your Honors. My name is Isabel Li. I'm appearing on behalf of the felons, Dai. In this case, we applied for asylum and withholding removal at the Chicago Immigration Court. And we subsequently appealed to the Board of Immigration Appeals. And the Board of Immigration Appeals denied our request with a summary judgment. And now it's here in this court today. So we first define who qualifies for asylum. Individual may be granted political asylum if she can prove that she has a credible, well-founded fear of persecution or forcibly return to her country. In the Eastern case, a felon was persecuted by the Chinese government due to her religious practice. She credibly testified in front of the asylum office and in front of the immigration court as to the details of her experience in China. And she provided sufficient corroborative evidence. And the immigration judge and Board of Immigration Appeals erred in denying the First, the immigration judge found some inconsistencies in her testimony. For example, the immigration judge stated that the appellant testified differently regarding her church practices in China. However, the appellant did testify that she learned about Christianity from her neighbor in July of 2009, and attended her first gathering in also in July. And then subsequently, she attended weekly gatherings starting in September. And that's not inconsistent with what she said in front of the asylum officer. And she, she, in addition, she provided sufficient evidence such as a receipt from the her time of release, and she paid a fine after she suffered at the hands of the Chinese police. And also, this court stated that the harm does not need to be physical in order to rise to level of persecution. So even if the immigration judge found that she has, she did not state, she did not state in her court testimony, in detail, for her injuries. This harm also rises to the level of persecution, because she that when the police arrested her, they took her religious materials. They also threatened her and her mom subsequently not to continue attending underground churches in China. Also regarding the details of her injury in jail, the immigration judge unreasonably requested the appellant to go into details regarding her traumatic experience. And the immigration judge concluded that because just because the immigration judge did not go into the gory details, that is in her written statement, then she's not credible. However, the appellant did testify regarding the major injuries and what the Chinese police did to her consistently throughout the whole proceeding, which is first in front of the asylum office and then in front of the judge. I guess your point is that your client knew that the record already contained her statement to the asylum officer containing all the gory details. So there really wasn't very much of a point in elaborating again, and it may have been indeed difficult for her to do so. Correct. I see. And also, in addition, the law did not require actual physical injury to meet the standard. So because of the other circumstances, like what I just said, like the police took her religious materials and threatened her and warned her and her mom not to participate in this kind of gathering again. So overall, she qualifies for asylum. Ms. Lee, I'm sorry to interrupt you. Can I ask you a question just with the time ticking here that has concerned me? So suppose for a minute, contrary to the argument that you're making, that the decision or the credibility assessment, that the inconsistency with respect to the frequency of church attendance is one that we don't have any issue with that way. And so under the legal framework, as I understand it, Ms. Dye would come under a requirement to supply corroborating evidence, right, to try to shore up that inconsistency or, in effect, to try to cure it that way. And one of the points that the immigration judge emphasized was that she didn't come forward with anything from her church attendance in Chicago. Your client says, of course, that that wasn't available to her. But why do we have to accept that explanation? Or why did the immigration judge have to accept that explanation? Because isn't that effectively exempting her from the corroboration requirement? So, Your Honor, that's assuming that the appellant is still in Chicago. And... No, I get that it may have taken some effort. It may have been difficult. They may not have been close friends, etc., etc. But she's under an obligation to do something to corroborate the church attendance, right? Correct. Oh, Your Honor, you meant like she continued practicing here in Chicago? Yes. Yeah, exactly. Exactly. And she didn't come forward with anything there. And as I recall, the record, her explanation was, well, the reason is because I really don't have relationships that are that close with people in Chicago at my church. Yeah, I did recall that the appellant testified that she read the Bible by herself. And she practiced religion by herself at home, oftentimes. And she's not very close to the church members here in Chicago. And we cannot speculate as to how she practiced her religion. And I'll reserve the last two minutes for rebuttal. Thank you. All right. Thank you very much, Ms. Lee. Ms. Perry for the government. Good morning. May it please the court, Rosanna Perry on behalf of the Attorney General. Substantial evidence supports the agency's determination that Ms. Dye did not meet her burden of proof for asylum withholding a removal and cap protection. Ms. Dye failed to present a credible claim or provide reasonably available corroborating evidence. There were significant material inconsistencies in and between her testimony and the documentary evidence as well as an omission. First, with regard to her attendance at church gatherings, she testified at the hearing that she began attending gatherings in July 2009, and attended whenever there was a gathering. However, she told the asylum officer that she only went to one meeting prior to her November 2010 arrest. She further told the asylum officer that she went to gatherings once a week since her first attendance on September 7, 2009. When she was asked by the asylum officer to explain the inconsistency, she was not responsive and contradicted herself. Further, with regard to her grandmother's attendance at church gatherings, she initially testified that her grandmother went to church gatherings with her or various members homes, at various members homes. However, she later testified that her grandmother could not attend because she had a leg injury. When she was confronted with the inconsistency, she said that her grandmother did not attend and that she never attended any underground church services with her. She acknowledged in her opening... Why is that inconsistency relative and probative of what we're talking about here today? It sounds to me like it falls very much within that our case law that says that even given the statute, the statutory language, you know, trivial inconsistencies, we just ignore and the IJ ought to ignore too. Well, it's not a trivial inconsistency because her grandmother's accident injury led to her connection to Auntie Wang and her eventual participation in these church gatherings. So I wouldn't say it's a trivial inconsistency. Another inconsistency occurred with her assault by the Chinese police. She failed to provide details at her hearing that she did not in her written statement. She testified that two police officers grabbed her hair and hit her head against the wall and that her body was bruised and swollen. But in her written statement, she indicated that she was told to kneel and was slapped and kicked by the officers and that her nose bled and she felt dizzy and fell to the ground after the beating. This is directly related to her alleged persecution. You know, we see this a lot, Ms. Perry, these comparisons of the asylum officer statement and the testimony in court. And, you know, I often wonder if we're asking too much of the applicants in this respect. It sounds to me like the only way you can avoid an IJ relying on these inconsistencies is if you say before the IJ, I incorporate by reference everything I said to the asylum officer. Otherwise, you're a dead duck. I mean, it's a gotcha problem. Well, you know, she didn't contest that the asylum officer's statements or the assessment to refer was reliable. So I would say that the IJ could rely on the assessment to refer as to contradict her statements at the hearing. I think, Judge, as I hear Judge Ripple's question, though, it's like a lot of these inconsistencies are small ball. And they don't become material because the, just because the Attorney General asserts their material, that they're non-trivial. Right? So I think that at least the burden, as I see it, for purposes of our discussion here today is for you to explain why these inconsistencies matter in this case. Well, they come to, they all have to do with her persecution. And the catalyst of her persecution was that she, was that her grandmother had this injury, and that she met Aunty Wang, and then it led to her persecution. And when you consider them cumulatively, she failed to meet her burden of proof. With regard to her corroboration, she failed to provide sufficient corroborating evidence. She provided a bail receipt and cash receipt showing only her arrest, not the harm that she allegedly suffered. She provided a letter from her mother, but her mother's letter didn't detail the arrest, or the fine, or talk about the fine that was paid, or the injuries that she suffered. Because her mother had, had to worry about the fact that she'd been visited by the Chinese police, hadn't she? Yeah, she was visited by the police, but she didn't provide a reason for why her mother couldn't, you know, stayed in a letter or an affidavit that, that, what occurred. The letter is very laconic, but perhaps that's about all the evidence that she provided that her mother could stay without another trip to the police station. I'm not sure that's true. She, um... I guess what the point I'm trying to make, Miss Perry, is that this, like many instances, the IJ seems to be asking for help. Anybody who was involved in this thing, who was involved in the clandestine church made a trip to the police station. Her mother was in, had a visit from the police. These people were all under surveillance. And now we've got an IJ sitting here in the United States saying, and why aren't these people telling me more about this whole incident? That's, you know, that sounds almost obtuse. Well, she didn't provide evidence stating that, you know, that other people were being surveilled. Her grandmother wasn't arrested. She was present at the time that she was arrested and she didn't provide a letter or affidavit either. And if her mother could provide a letter stating anything, stating that the police went to her home, I don't see why her mother couldn't state in the same letter what happened to her at the police station. She also didn't provide evidence showing her ties to the Chinese Christian, Union Christian Church in Chicago. She supposedly attends once a week, but I don't see a reason why she couldn't provide a letter from her pastor saying that she attends the church. Ms. Perry, at least the last time I dealt with a police officer an asylum case from China, China was no longer, or for many years, has not been accepting people who have been removed from the United States. What's the current status on that? I'm not certain, Your Honor. Okay. As of this point, even if we were to deny relief on the Ms. Di to be removed anytime soon to China. That may be, but I mean, that doesn't support her claim of asylum. I mean, I know it's legally distinct. Yes. Yes. Yes. With regard to her cat protection claim, she has waived it. She's not addressed it in her opening brief. In any case, the claim was based on the same factual predicate, not credible for her claim for asylum and withholding of removal. If there are no further questions, the respondent respectfully requests that the court deny the petition for review as substantial evidence does not support her claim for asylum withholding of removal and cat protection. Okay. Thank you very much, Ms. Perry. Ms. Lee, any rebuttal? Yes. So the appellant was asked to talk about things that happened years ago. Again, again, first in front of the asylum office and then in front of an immigration judge. And the judge was looking for minor issues and comparing the two testimonies very closely. And even so, he did not find anything that is major or to the heart of the claim. And the people in China are also under the same type of scrutiny. And to ask them to provide evidence when the appellant already testified in detail and provided fines from the police station, that sounds unreasonable. So it's more likely than not the appellant was persecuted in the hands of the Chinese government. And if she were to be sent back to China, now I think after five years, the Chinese government has household registry. They will cancel your house registry. And when you're in China, it's very hard for you to find employment and stuff like that. That would greatly affect her life. And so I think this court, I respectfully ask this court to remand this case to the immigration court. Thank you. All right. Our thanks to both counsel.